Okay, we're here on United States versus Robbins. This is 247067. And we'll start with the machine. Thank you. Good morning, your honors and may it please the court again I'm Kathleen Shannon I represent the appellate Mr T on Robbins, the order denying the suppression motion should be reversed. Although the district court was right that there was a Rodriguez moment after trooper Coke received the rental agreement. It was wrong that the subsequent dog sniff was justified by reasonable suspicion. The only factor that the district court relied on to find reasonable suspicion was this that Williams told police after a pause, they had been to UConn, Oklahoma. Whereas Mr. Robbins told police that they had been to California, New Mexico, and Arizona. That is not enough for reasonable suspicion. Oh, go ahead. Please, please. You go ahead. Council, I'm trying to understand what we're supposed to look at to review to do our de novo review of the ultimate Fourth Amendment question here. And to that end, I'm struggling to better understand how the district courts credibility determinations factor into our review, because typically, even if the court narrowed its focus on our de novo review of the inquiry if there are other facts presented in the totality that would support reasonable suspicion. Those wouldn't be off limits to us to review for the ultimate Fourth Amendment question. But here it feels to me like we may be limited because of the district court's emphasis on how it read or how it understood trooper Cox credibility. How it made a credibility determination with respect to trooper. So, if I'm being clear about my question, how do we think about the district courts consideration of the troopers credibility in our analysis of the Fourth Amendment question? Your honor, I understand the question and I think the negative determination about trooper coax credibility is a factual determination that this court defers to the government hasn't argued that that determination is clearly erroneous. And I think with good reason. I mean, that's basically an unreviewable finding that trooper coax testimony wasn't reliable and the district court himself was careful to say that he was relying only on the video to find that these statements were made because he wasn't relying on coax testimony. You know, it's true that this court is on de novo review. And so that does give it a little bit more leeway. But I still think party presentation principles matter as far as what factors this court considers and assessing whether reasonable suspicion exists. And I point this court to, for example, Lopez, there are factors in the record that the court doesn't consider because they weren't presented by the parties or considered by the district court. And so I think in this case, it's very clear that the district court only relied on the inconsistency and the statements. And this court has never found reasonable suspicion based on these kinds of inconsistent statements alone. On the contrary, go ahead. Could an inconsistency in travel plans ever create reasonable suspicion? Your Honor, I think that because reasonable suspicion is fact bound, I'm not going to say that there's no inconsistency that could never, you know, that would ever support maybe there could be a lie that's so egregious. But I think in this case, and with this kind of relatively minor inconsistency, I think this case is almost never, this is never going to support reasonable suspicion. No, you go ahead. Sorry. And, you know, to begin with, I don't even think these statements are inconsistent. Again, it could be true that you stopped in UConn on the way back from a longer trip that involved California, New Mexico and Arizona. And that's especially true when you take the context of the statements were made into account. You know, Williams gave this response about being in Oklahoma or in UConn as part of a conversation where Koch asked him, how are y'all doing today? And then Rob is on the other hand. I'm sorry, I keep talking over you, but don't we have to, and I realize this isn't a popular view among the defense bar, but we do have precedent saying that we do have to view the evidence in the light most favorable to the ruling, right? And so if there are circumstances in which an inconsistency in travel plans, and I think we can all imagine, you know, I say I'm traveling with Judge Murphy and we get stopped in UConn, Oklahoma, and the policeman stops me and I say, well, we started in California. We were going to Maine for a football game and Judge Murphy says, no, we actually started in Portland and we were going to Florida to see a Miami Heat game. Well, those are such extreme examples that I think anybody would say, well, that's very suspicious. And here, maybe it's not as extreme, but we do have to view the evidence in the light most favorable to the ruling, don't we? Your Honor, I don't think the light most favorable to the ruling language really does any work. I mean, the Supreme Court's clear in Ornelas that the ultimate determination of reasonableness or reasonable suspicion is a legal conclusion that this court makes. You know, my theory about the light most reasonable language is if it's in conflict with Ornelas, it's wrong. And on the alternative, it could just be an expression of the clear error standard, but we're not challenging the district court's factual finding that these statements were made. And I think it's actually really notable that if you read the district court's order, he's not even finding that these statements are very suspicious. He says, if I were writing on a blank slate, I'd be inclined to agree that these statements aren't that suspicious. But the inconsistency is a factual finding, isn't it? Your Honor, I don't think it is, but regardless, under either standard, this court can look at the statements and the context in which they were made to determine whether they're inconsistent or whether they rise to reasonable suspicion. And as an example, I would point this court to its decision in Leon, where it actually does review the district court's finding that inconsistent statements were made. There, the defendant had made multiple statements that he was from Arizona, that he was transitioning to Minnesota, and this court, on appeal, looked at those statements and said they're not actually inconsistent. So I think it's clear that this court can make its own judgment, both about whether these statements are inconsistent, but even accepting that they're inconsistent, this court can conclude, and I think should conclude, that they don't rise to the level of reasonable suspicion. And that's because, as this court has recognized, there are just so many reasons why innocent travelers might make statements that are different along these lines. They could be tired, they could be distracted, they could be on the phone with somebody else, or they could just be really private people. As this court said in Santos, many motorists, even innocent ones, just don't think their travel plans are any of the trooper's business. And, you know, reasonable suspicion requires that the articulated factors together, and here we have just one factor, but taking everything into account, it requires... Well, counsel, can I stop you for a second? I want to really drill down on my question because I'm still a little confounded about how to treat the credibility determination in terms of defining the universe of factors that are relevant to reasonable suspicion. So in getting to this place where it's, you know, a totality of one, so to speak, right, where it's just the inconsistent statements, the other factors that the district court recounted in reviewing the magistrate judge's reasoning were the nervousness, right, and then the over politeness, gym bags, the dashboard photo, and then these inconsistencies, right? Is it your position that we should attribute the rejection of the nervousness, the politeness, the gym bags, the photo on the dashboard, all as a function of rejecting trooper Cox's credibility and sort of deal with it that way? Or is really only the nervousness attendant to the credibility determination? I think that the credibility determination does have some relevance as far as the idea that some deference is owed to a police officer's testimony about what is suspicious. I don't think any deference is owed to trooper Coke in this case because the district court found that his testimony was not consistent with the video evidence and it was within the district court's discretion to choose not to credit his other testimony about, for example, the photograph being suspicious or politeness being suspicious. I also don't know that it's necessary for this court to get here because I just think even taken on their own, those factors simply are not suspicious and I'm happy to address them if this court has any questions, but I think whether it's because of the judge's credibility determination or because they're simply not suspicious, those other factors don't matter and I don't think need to be addressed by this court. All the factors that have been mentioned so far exclude the factor of the rental agreement. Now, in some of the cases, there's a suggestion that the fact that there's a rental vehicle is one of the little items you put on the scale of reasonable articulable suspicion. The consideration of the rental status here is even different than that. If you look at the transcript and the recross examination of the trooper, it's very clear that until the other officer brought the physical evidence of a rental agreement, it was uncertain whether there was a rental agreement. It was uncertain whether these people were properly using the rented car. Now, none of the questions have addressed that, so that's a factor, it seems to me, that exists that the magistrate judge didn't talk about that being dubious. The district judge didn't talk about that being dubious, and if you have that factor, along with some inconsistencies in travel plans, under our case law, isn't that just in and of itself enough to say that given all those circumstances, we have to affirm? No, Your Honor, and I think for several reasons. First, by the time the dogs have occurred, and I think this is clear from the record, the rental agreement had been produced. And so there, to the extent that an outstanding rental agreement could raise a question about whether they're lawfully operating the vehicle, once the agreement is produced, that question is gone. I think it's also, in this case, it's not even a third-party rental, which this court has said might minimally contribute to reasonable suspicion. Here, Mr. Robbins himself rented the car, so I don't think the fact that he rented the car contributes. Nobody has this agreement to look at. The other officer hands it to Koch, and then the other officer leaves and starts his little routine with having the defendant put his hands on the vehicle and stand back and then make room. I mean, it was almost instantaneously, after the agreement is delivered to Koch in the car, in the vehicle, and the search by the dog, it's almost instantaneously, in a matter of seconds. Your Honor, the timeline is not correct. It's close to two minutes until the dog sniff occurs. There's never been any... Two minutes from when? So, he receives the rental agreement at around 1130, and the dog sniff, and I don't want to say exactly how long it was, but I believe it wasn't until around 1330. The officer, what's the other officer's name? Craig? I don't recall his name off the top of my head. Whatever his name was. He has the phone that has the agreement on it, correct? Your Honor, Koch receives the phone with the agreement at approximately 1128, which I believe is two minutes or so before the dog alerts. And this is a factual question that the district court found in Mr. Robbins' favor. There's never been any argument or suggestion that they were unable to read the rental agreement or that any question regarding the ability to drive the car existed after the rental agreement was received. And your question was also like, haven't we found reasonable suspicion in cases like this? I want you to go on before I go there. It will be clear if I look at the sequence events, that it is clear that there were two minutes that passed between the time that Koch had the phone with the rental agreement and when the dog sniff started. That's at least two minutes. Your Honor, I don't want to, you know, I don't know if it's like 90 seconds or two minutes or two minutes and 30 seconds. You know, I noticed in the suppression hearing, people call it more than a minute. It's more than a, it's more than seconds. It's well more than a minute. I think it's around two minutes. And just, Your Honor, to ask about other cases, I think this case just falls really short of what counts as reasonable suspicion in other cases. In Simpson, you have numerous inconsistencies, which only contribute in combination with bizarre travel plans, a criminal history of dealing drugs, and extreme nervousness. And there, this court said it was a close call. Here, there's nothing else. And I don't think it's that close of a call. I think there's no reasonable suspicion. And I would point out this court has never found reasonable suspicion based on a single factor, let alone a factor that's equivocally suspicious as the statements here, which, again, I just don't think meaningfully indicate any connection with drug dealing. It doesn't eliminate any substantial portion of the innocent public. And so if you look at the inconsistent statements or in the record, there isn't reasonable suspicion and therefore we'd ask you to reverse. Let me ask this. Do we view this from a subjective perspective of Officer Koch or from an objective perspective of the reasonable officer under these circumstances with a roadside stop? So reasonable suspicion is a legal question that this court reviews de novo, viewing the evidence objectively, to the extent that there is sometimes deference owed to an officer's interpretation of evidence as suspicious. The district court didn't accord Officer Koch any such deference in this case because he found that Koch's testimony was not credible. That credibility determination is a factual finding that this court must defer to on appeal. I understand. I think the dubiousness stuff from the magistrate is much more limited than you say it is. My question is different. Do I view this from a subjective perspective of Officer Koch or from an objective perspective of the reasonable officer in this setting on the highway? Which one? Your Honor, I believe it's a legal question this court reviews de novo, and I believe the question is whether there's particular and objective circumstances from which to conclude there's reasonable suspicion. So I believe it's an objective standard. And again, if there's no further questions, I'd ask this court to reverse the denial. Thank you. Sorry, I keep muting myself. Judge Murphy, did you have any other questions for Ms. Shin? I have none. Judge Rossman, did you? No, thanks. Okay, thank you. Ms. Williams, we'll hear from you. Good morning, Your Honors. Nice to appear via Zoom. Lisa Williams, representing the United States of America. I would like to pick up kind of where we left off and nail down this timeline because I do think it is very important. So the district court, the video evidence demonstrates that 1152 is when the phone with the rental agreement is handed to Trooper Koch. And it's Trooper Kraft is the other trooper involved. And then the district court finds that at 1211, so 19 seconds later, Trooper Kraft is asking the defendant to exit the vehicle. Now, that's part of the sniff process. So Trooper Kraft initiates the process to conduct the free air search immediately after handing the rental agreement. Part one is getting the occupants out of the vehicle, securing them, and then he gets his dog and he runs the dog around and does the search. The dog begins the search at 1320. And then the district court finds that at 1336 is when the dog alerts. And I think everyone agrees that once that dog alert happens, that's when we move out of reasonable suspicion territory into probable cause. And so what we have is a period of time from 1152 to 1336. So it's less than two minutes. But again, the process to initiate the search happens instantaneously as soon as he receives the rental agreement. And here's the thing. Yeah, I don't understand why that would cut in your favor. It seems to substantiate Ms. Shinn's point. I'm not sure I agree with that. Because when Trooper Cock is in the car and receives the rental agreement, he has to review the rental agreement. He has to finish writing the ticket and he has to print the ticket. Receiving the rental agreement does not end Trooper Cock's involvement in the ordinary business of the traffic stop. And so he's still doing the ordinary business of the stop while for the next minute and a half, Trooper Craft takes the dog around the vehicle. And that's why it cuts in the government's favor. It's not so much with the reasonable suspicion argument, right? It's whether or not there's this Rodriguez moment. Aren't you on clear air for that? Well, Your Honor, the government's position is that the finding of a Rodriguez moment isn't factual. It's illegal. And so we would say we're not on clear air because it's not a factual decision. It's a legal conclusion whether or not it ended. And even if we were on clear air, the court has the video evidence. And it's clear that when Trooper Cock receives the rental agreement, he's not done writing the ticket. In fact, after he receives the rental agreement, he continues to ask the driver of the vehicle what he does for a living, which under this court's precedent, questions about employment and what you do are proper purposes for the traffic stop. But the Rodriguez moment doesn't, I mean, that could have taken place at any moment when Trooper Cock, whatever his name is, when he stops the vehicle. I mean, it doesn't have to be at the end, at 11, at 1320. Well, it has to be when the business of the traffic stop has concluded or when you divert away from the business related to the traffic stop. And that could have started at any time. In other words, if he, you know, let's say when he contacted the canine officer, if he put down the warning pad to contact the canine, that could be a Rodriguez moment, right? It doesn't need to be at the end. It could be at any time. If, as you point out, Ms. Williams, if he diverted from the mission of the traffic stop. Yes, I would absolutely agree with that, Judge Blackrock. But in this case, the government's position is that he didn't divert from the mission of the traffic stop. The things that he, that Trooper Cock is doing are related all to the traffic stop, including the questions he's asking Mr. Williams in his car. Now, Trooper Craft and the dog have nothing to do with the traffic stop, right? That's the diversion. But that activity is going on at the same time that Trooper Cock is on mission with the traffic stop. This argument all goes to your, the government's position that there's a, we can affirm an alternative grounds, right? That's correct, Your Honor. Okay. So, so if we could turn to the principle ruling that the district court made here. My question is, again, it's similar in quality to what I was asking Ms. Shen, which is trying to really understand what the scope of our review is when it comes to the factors that support reasonable suspicion. And the government, as I read your brief, narrows our inquiry by your choice of factors. You rely on the defendant's inconsistent statements, which is what the district court found as positive. In addition, you point us to Mr. Williams' nervousness and the dashboard photo. You don't talk about other factors that the district court considered and rejected. So my first question is, should we confine our review not just to the inconsistent statements, as Ms. Shen is arguing, but to these three factors that the government posits? Your Honor, you don't have to confine your review to just those three factors. This court can affirm on any ground supported by the record, which is what the government— So even if our ultimate review is always going to be de novo on the Fourth Amendment question, something has to direct the court's attention to what matters in a given case. And here the government has chosen, in its view, what matters. So why should we not confine our review in the way the government has advanced in this case? I don't think party presentation has ever been read that narrowly, Your Honor. I think that certainly the principles behind party presentation is that the court won't step outside of the issues to find a new legal theory that the parties don't present. But certainly in a case like this where the court has the full record for it, party presentation wouldn't consider this court from considering a factor such as the car was rented and that the individuals weren't able to immediately produce a rental agreement. What about the credibility determination, the adverse credibility determination? Does that impact every finding other than what the district court said in footnote 7 of its order, other than the video? Because the court said the video doesn't depend on the trooper's credibility. So is a correct way of reading the district court's order that the only thing that doesn't depend on credibility is the video and the credibility is discounted in this case? We defer to that finding and move on. Is that a way to look at this? I do think one of the toughest or most challenging parts of this appeal, Your Honor, is what about this credibility finding? And so what I think the court has to do is really pick apart what was said and what was found. What the district court said is the magistrate judge expressed concerns about credibility. I agree. Right. So the district court didn't make any new independent credibility findings. They just adopted what the magistrate judge said. So to really understand what the credibility issue is, I think the court has to look at the report and recommendation. And what the magistrate judge found were simply that many of Trooper Cox stated bases were of dubious value as a foundation to form a reasonable suspicion. And in other instances, simply did not exist from a review of the video evidence. So I think government make any objections to the magistrate judge's determination of the troopers credibility? Your Honor, I'm sorry. I don't know the answer to that. I don't have the we did. The government did file that. They entitled it a report objection, but it was a response to the defendant's objection to the R&R and the court. The district court treated it as the government's objections. And I am sorry. I don't know if if if we address that in there. Here's what I was talking about. Reasonable suspicion, though, I think I really want to highlight that the defendant conceded during her argument that there are times. In which inconsistent travel plans standing alone would be sufficient to form reasonable suspicion that that was a concession. Now, the defense argues this is not that case. Right. But there is that concession there. I think that they have to concede that based on the prior precedents. And so really what this court is in has to do is review. OK, what about the how how what's the nature and substance of these inconsistent travel plans? And the government submits. They are very inconsistent. The Orcaso-Rivas case from 2020, which the government cited in its brief, it's unpublished. But there it found reasonable suspicion based on part by with inconsistent travel plans. And and the inconsistency there was that one person said they were going to her uncle's ranch to help clean up. And the other said they were visiting her friends to help build a fence like that is not very inconsistent. Right. They're both kind of maybe going to the same place. They don't. But the court found that was an inconsistent travel plan here. What we have in that case, I thought you said there were other factors for reasonable, articulable suspicion. Correct. They're there. They that that court. Yes, your honor found. OK. All right. All right. That's all I want. But yes, but I know that I understand. My question is what what cases say that travel plans alone in certain circumstances can be enough for reasonable, articulable suspicion, which is contrary to the United States versus Santos? Well, I think the Wood case would say that, your honor, because the quote from Wood is, as with unusual travel plans, inconsistencies and information provided to the officer during the traffic stop may give rise to reasonable suspicion of criminal activity. And that doesn't say inconsistencies and information combined with other factors. It is just point blank says inconsistencies may give rise to reasonable suspicion. So that puts it that feels like it puts the appellate court in a quite an awkward position. You know, if we're if we're analyzing whether an inconsistent statement can give rise to reasonable suspicion, our cases generally look at that in the context of that specific case. Are there other things that also weigh in favor of reasonable suspicion? It seems that what the government is positing would require us to decide how inconsistent something is. Is it super inconsistent? Is it is it medium inconsistent? And that seems to me not to be the tenor of our scope of our review. And I'm not arguing that, your honor. And I apologize if that wasn't clear. What what I am arguing, though, is that that is a sufficient ground to affirm the district court's decision that the district court found that that gave rise to sufficient reasonable suspicion. And this court's review of that order should be affirmed because it is a permitted basis. There's no clearly or it's not clearly erroneous that they provide a different. Well, I thought just to clarify, I thought what you were saying is that it's not just we affirm the district court found inconsistent statements support reasonable suspicion. And government's position is we can affirm that. I thought you were saying we also had to affirm because it was very inconsistent. Oh, no, no. I think to the to the extent that the court would get into weighing the totality of the factual of the facts behind the inconsistency, I am saying this is more inconsistent than other cases. But I do think that this court owes a degree of deference then to the district court that once it if once you get past the legal issue of can inconsistent travels statement standing alone provide sufficient reasonable basis. If this panel says, yes, they can. Then at that point, you should affirm the district court. In the deference to that, can I push back on that and follow up on Judge Murphy's point about Santos? You know, in Santos, you know, the panel did say that other courts have accepted similarly invasive or inconsistent accounts. We stress, however, that conversations of this sort is not sufficient in and of itself to warrant detaining or searching a motorist. And so and Santos was adjudicating reasonable suspicion as a matter of law. And so on this very uncomfortable inquiry that we're confronted with to make this legal adjudication is characterized in Santos. Don't we have to compare what was on what appears on the video is these inconsistent statements to Officer Coke Coke in comparison to the inconsistencies in Santos. And we, the three of us will say, oh, well, these are worse. These are more inconsistent than what was presented in Santos or not as bad. And if they're not as bad, aren't we bound by the panel opinion? Because that's an adjudication of law. So Santos is easily distinguishable, Your Honor, from from this case, because Santos is a single vehicle occupant. And and the it's the inconsistent statements were not two different people providing dramatically different inconsistent statements. And so it's one person over the course of a conversation having some internally inconsistent statements, which if you look at what was inconsistent about Mr. Santos, those statements that the panel found, you know, and sometimes they are not even really that inconsistent. So I don't think that Santos applies here when when what the inconsistency is, is between two people who who don't who don't have the same story. Likewise, there's a line of implausible travel stories. Those don't those cases don't really apply here either, because this isn't an implausible story. It's a it's an inconsistency between two people who should both know where they're going. So you are saying that a panel sitting like this, if they're faced with an issue of statements of travel plans, they need to dissect them and decide whether they are inconsistent travel plans between more than one persons in the traveling car or whether they're internally inconsistent statements by a single person talking that was in the car or another category. So we have to do that whenever we're faced with these things that we apply different rules to the three categories. No, Your Honor, I don't think that this panel needs to get that fine into into the weeds. To me, the distinction is how how this court has said, you know, nervousness by itself does not give rise to reasonable suspicion has to be extreme nervousness. Right. There's that line. And the distinction I'm drawing is just like it has to be extreme nervousness. There there is a bit of a difference between implausible travel plans and inconsistent travel plans between a driver and passenger. I think it's just a different categorically. It's a different type of evidence that that enters into the calculus. Understood. Judge Murphy, did you have any other questions for Ms. Williams? No, I don't. Judge Rossman, do you? No, thank you. OK, thank you, Ms. Williams. Kevin, does Ms. Shinn have any time left? No, she did not. OK, sorry about that, Ms. Shinn. I think that was my fault again. But very well presented by both sides. This matter is submitted and will be.